

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA, by and through Robert Ariail, in his capacity as Solicitor of the Thirteenth Judicial Circuit, <br> Plaintiff, <br><br> vs. <br><br> LENDINGTREE, LLC, f/k/a Lending Tree, Inc., d/b/a LendingTree.com, Realestate.com, and Lending Tree, Inc., <br> Defendant. | §§§§§§§§§§§ | CIVIL ACTION NO. 6:08-3044-HFF |

ORDER

## I.    INTRODUCTION

Plaintiff filed this action in state court for alleged violations of the South Carolina Mortgage Loan Broker's Act, codified at sections 40-58-10 to -110 of the South Carolina Code. Soon thereafter, Defendants timely removed the matter to this Court.

Pending before the Court is Plaintiff's motion to remand. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of this Court that Plaintiff's motion to remand will be granted.

## II.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed this action in state court, asserting that Defendant has violated certain provisions of the Mortgage Loan Brokers Act, codified in the South Carolina Code at sections 40-58-10 to -110. The Act provides, in relevant part, the following:

(A) A loan agreement with a mortgage broker or originator must contain an explicit statement that:

> (1) the mortgage broker or originator is acting as the agent of the borrower in providing brokerage services to the borrower;
>
> (2) when acting as agent for the borrower, it owes to that borrower a duty of utmost care, honesty, and loyalty in the transaction, including the duty of full disclosure of all material facts. If the mortgage broker or originator is authorized to act as an agent for any other person, the brokerage agreement must contain a statement of that fact and identification of that person;
>
> (3) a detailed description of the services the mortgage broker or originator agrees to perform for the borrower, and a good faith estimate of any fees the mortgage broker or originator will receive for those services, whether paid by the borrower, the institutional lender, or both; and
>
> (4) a clear and conspicuous statement of the conditions under which the borrower is obligated to pay for the services rendered under the agreement.

(B) If a mortgage broker or originator violates the provisions of subsection (A), the borrower may recover from the mortgage broker or originator charged with the violation:

> (1) a penalty in an amount determined by the court of not less than one thousand five hundred dollars and not more than seven thousand five hundred dollars for each loan transaction;
>
> (2) fees paid by the borrower to the mortgage broker or originator for services rendered by the agreement; and
>
> (3) actual costs, including attorney's fees, for enforcing the borrower's rights under the agreement.

(C) No mortgage broker or originator charged with the violation may be held liable in an action brought under this section for a violation if the mortgage broker or originator charged with the violation shows by a preponderance of evidence that the violation was not intentional

> and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error.

S.C. Code Ann. § 40-58-78.

Plaintiff bases his ability to bring this suit for alleged violations of this statute pursuant to South Carolina Code section 15-3-570, which states the following:

> An action upon a statute for a penalty or forfeiture given, in whole or in part, to any person who will prosecute for it must be commenced within one year after the commission of the offense. If the action be not commenced within the year by a private party it may be commenced within two years thereafter in behalf of the State by the Attorney General or the solicitor of the circuit where the offense was committed, unless a different limitation be prescribed in the statute under which the action is brought.

*Id.* § 15-3-570.

Defendant removed the action to this Court pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332, 1446, 1453.

## III.   STANDARD OF REVIEW

The United States Court of Appeals for the Fourth Circuit recently summarized the standard of review that this Court must apply when considering a motion to remand such as this.

> [F]ederal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only *allege* federal jurisdiction with a short plain statement-just as federal jurisdiction is pleaded in a complaint-when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction is proper.

>                                    ****
> [I]n removing a class action based on diversity jurisdiction under 28 U.S.C. §§ 1453 and 1332(d), the party seeking to invoke federal jurisdiction must allege it in his notice of removal and, when challenged, demonstrate the basis for federal jurisdiction.

*Strawn v. AT & T Mobility L.L.C.*, 530 F.3d 293, 296-98 (4th Cir. 2008) (citations omitted). "Statements in CAFA's legislative history, standing alone, are a insufficient basis for departing from this well-established rule." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329 (11th Cir. 2006) (citations omitted).

## IV.    CONTENTIONS OF THE PARTIES

In arguing that the Court should remand this action to state court, Plaintiff contends that (1) this is not a class or mass action under the Class Action Fairness Act (CAFA) and (2) absent a compelling argument to the contrary, Plaintiff must be allowed to enforce its state laws in state court. Defendant, however, disputes these assertions.

## V.    DISCUSSION AND ANALYSIS

A.    *Whether this is a class action or a mass action under CAFA.*

Plaintiff maintains that this matter is neither a class action nor a mass action such that removal jurisdiction pursuant to CAFA is proper. The Court agrees.

Defendant aptly observed the four requirements for this Court to have jurisdiction over this case under CAFA:

- The case must be a civil action, either a class action or a mass action;
- The case must involve a class of at least 100 plaintiffs or class members;

- Any member of the plaintiff class must be a citizen of a state different from any defendant; and
- The amount in controversy, in the aggregate, must exceed $5,000,000.

(Def.'s Opp'n 4 (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)(B), and (d)(11)).)  The Court will consider each of these elements in turn.

    1.    *Whether this case is a civil action, either a class action or a mass action.*

This is, of course, a civil action.  Thus, the question for the Court is whether it is a class action or a mass action.  The Court holds that Defendant has failed to demonstrate that it is either one.

CAFA states that "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Thus, the United States Court of Appeals for the Fifth Circuit's recent foray into selective portions of the legislative history of CAFA in an attempt to determine the meaning of the term "class action" is somewhat puzzling.  *See Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 & n.4 (5th Cir. 2008) (relying on certain portions of CAFA's legislative history supporting its notion that "the definition of 'class action' is to be interpreted liberally" in cases brought by attorneys general but largely ignoring other portions of that same history stating "that cases brought by State attorneys general will not be affected by this bill").

First, CAFA is crystal clear.  Again, "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."

5

28 U.S.C. § 1332(d)(1)(B). In a recent opinion, the Fourth Circuit provided us with direction as to the interpretation of unambiguous statutes such as this:

> "When interpreting statutes we start with the plain language." *U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 350 (4th Cir. 2004). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526 (2004) (internal quotation marks omitted). In interpreting the plain language of a statute, we give the terms their "ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import." *North Carolina ex rel. Cooper v. Tenn. Valley Auth.*, 515 F.3d 344, 351 (4th Cir. 2008) (internal quotation marks omitted).

*Stephens ex rel. R.E. v. Astrue*, No. 08-1527, 2009 WL 1241572, at *4 (4th Cir. May 7, 2009) (parallel citations omitted). Thus, there appears to this Court no basis for looking to the legislative history of CAFA to interpret the meaning of the Act. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history.").

It is indisputable that "Congress expressly intended CAFA to expand federal diversity jurisdiction over class actions." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1197 (11th Cir. 2007). One does not need to look to any other source but the statute, however, to make that determination.

> For example, under § 1332(d)(6), the claims of class members are aggregated to determine whether the amount in controversy exceeds $5,000,000; under § 1332(d)(2)(A) requires only minimal diversity, not complete diversity; under § 1332(d)(10), "an unincorporated association [is] . . . deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized," which departs from the rule that frequently destroys diversity jurisdiction, that "a limited partnership's [or unincorporated association's] citizenship for diversity purposes can be determined only by reference to all of the entity's members," *Kuntz v. Lamar*

> *Corp.,* 385 F.3d 1177, 1182 (9th Cir. 2004) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196-97 (1990)); and under § 1453(b), a class action may be removed "without regard to whether any defendant is a citizen of the State in which the action is brought [and] . . . such action may be removed by any defendant without the consent of all defendants," and the one year time limit for removal set forth in § 1446(b) does not apply.

*Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (alterations in original) (parallel citations omitted).

Thus, the Court is persuaded "that these broadening provisions indicate that Congress carefully inserted into the legislation the changes it intended and did not mean otherwise to alter the jurisdictional terrain." *Id.* at 684-85. In other words, had Congress wanted to include cases such as this one under the provisions of CAFA, it could have easily and clearly done so. But, it did not. Thus, the Court will not resort to conflicting legislative history to do so either.

Second, as the United States Court of Appeals for the Second Circuit noted, "the Senate report was issued ten days after the enactment of the CAFA statute, which suggests that its probative value for divining legislative intent is minimal[,]" *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006), or, as the United States Court of Appeals for the Fourth and Seventh Circuits have recognized, otiose, *Kofa v. U.S. I.N.S.*, 60 F.3d 1084, 1089 (4th Cir. 1995) (stating that postenactment statements "do not count" because the term "'subsequent legislative history' [is] an oxymoron" (quoting *Cont'l Can Co. v. Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund*, 916 F.2d 1154, 1157-58 (7th Cir. 1990)).

Third, as noted above, the relevant state statute is South Carolina Code section 15-3-570. That statute allows the solicitor to bring an action on behalf of the state to enforce state law and to seek a penalty or forfeiture for the violation of such state law after the limitations period for a private cause of action has passed. S.C. Code Ann. § 15-3-570. The statute fails, however, to authorize a

representative action. *See id.* Instead, according to section 15-3-570, the solicitor prosecutes on behalf of the state. *Id*. Thus, with the case having been filed pursuant to section 15-3-570 and because there is absolutely no similarity between section 15-3-570 and Rule 23, it cannot also be said that it was filed "under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

Nevertheless, Defendant continues to maintain that Plaintiff seeks to bring a representative action, as allegedly evidenced by Plaintiff's Complaint. There, Plaintiff states in pertinent part the following:

> 1. The Plaintiff is the State of South Carolina, with this civil suit being brought by the Solicitor of the Thirteenth Judicial Circuit to enforce the civil penalty and forfeiture liability for violations of the Registration of Mortgage Loan Brokers Act in South Carolina Code sections 40-58-10 *et seq.*
> 2. The Solicitor is statutorily authorized to initiate and maintain this action, and does so, pursuant to South Carolina Code section 15-3-570 for all persons residing within Greenville and Pickens counties at the time they made a loan agreement with Defendant LendingTree, LLC ("LendingTree") as the mortgage broker during the statutory period.
> 
> ****
> 
> 8. The claims are asserted by the solicitor of the circuit where the offenses where committed solely on behalf the State and exclusively under the South Carolina Registration of Mortgage Loan Brokers Act.

(Compl. ¶¶ 1, 2, 8.)

After reviewing these passages, the Court finds that paragraph 1 makes clear that "[t]he Plaintiff is the state of South Carolina" and that "this civil suit [is] being brought by the Solicitor of the Thirteenth Judicial Circuit" in which the alleged violations of the Act took place; and paragraph 8 makes clear that the Solicitor is suing "solely on behalf of the State and exclusively

8

under the . . . Act." *Id.* Nevertheless, Defendant contends that Plaintiff's allegation in paragraph 2, that "[t]he Solicitor is statutorily authorized to initiate and maintain this action . . . pursuant to South Carolina Code section 15-3-570 for all persons residing within Greenville and Pickens counties at the time they made a loan agreement with Defendant," *id.*, "confirms that (1) Plaintiff commenced this matter in a representative capacity and (2) it did so pursuant to a state statute, thereby satisfying both components of CAFA's definition of 'class action,'" (Def.'s Opp'n 5.) The Court strenuously disagrees. Simply stated, a plaintiff's statement that a statute allows for something that it does not does not make it so.

As already observed, South Carolina Code section 15-3-570 provides that "[i]f [an] action be not commenced within the year by a private party it may be commenced within two years thereafter in behalf of the State by the Attorney General or the solicitor of the circuit where the offense was committed." S.C. Code Ann. § 15-3-570. Thus, although Plaintiff stated that he was "statutorily authorized to initiate and maintain this action . . . pursuant to South Carolina Code section 15-3-570 for all persons residing within Greenville and Pickens at the time they made a loan agreement with Defendant," (Compl. ¶ 2), such statement was either a scrivener's error or a plain misstatement of the law. Section 15-3-570 does not allow for a representative action but instead clearly states that actions brought under that statute are brought "in behalf of the State." *Id.* Thus, whether a scrivener's error or a misstatement of the law, the Court is not bound by Plaintiff's statement to the contrary in paragraph 2 of the complaint. Simply stated, such incorrect statement is an insufficient basis on which this Court can find jurisdiction over this matter pursuant to CAFA.[1]

---

[1] Similarly, had Plaintiff filed the case in this Court, the Court would not be bound by Plaintiff's statement that section 15-3-570 endowed the Court with jurisdiction when it clearly does not. In that instance, a sua sponte dismissal for want of jurisdiction would be appropriate.

9

Defendant also relies heavily on *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008), to support its position that CAFA grants the Court jurisdiction over this matter. The Court is unconvinced.

In *Caldwell*, Louisiana, through its Attorney General and counsel from the private bar, filed a *parens patrieae* action against insurers and other related groups, alleging violations of the state's antitrust laws. *Id.* at 421-22. They sought both treble damages and injunctive relief. *Id.* at 423. Defendants removed the case to the federal district court pursuant to CAFA and the State moved to remand. *Id.* The district court denied the State's motion after which the State petitioned the court for permission to file an interlocutory appeal, which was granted. *Id.* The court ultimately held that the State was seeking monetary damages to which only individual policy holders were entitled. *Id.* at 429.

> [T]he narrow issue before this court is who are the real parties in interest: the individual policyholders or the State. *We conclude that as far as the State's request for treble damages is concerned, the policyholders are the real parties in interest*. The text of § 137 of the Monopolies Act, which authorizes the recovery of treble damages, plainly states that "any person who is injured in his business or property" under the Monopolies Act "shall recover [treble] damages." The plain language of that provision makes clear that *individuals have the right to enforce this provision*. . . . [The State's complaint] makes clear that it is seeking to recover damages suffered by *individual policyholders*. . . . We have no reason to believe they are not, especially given that the purpose of antitrust treble damages provisions are to encourage private lawsuits by aggrieved individuals for injuries to their business or property.
>
> ****
> We are mindful that in this action Louisiana is also seeking the remedy of injunctive relief. *If Louisiana were only seeking that remedy, which is clearly on behalf of the State, its argument that it is the only real party in interest would be much more compelling*.

*Id.* at 429-30 (emphasis added).

In the case at bar, unlike in *Caldwell,* the State, not any private citizens, is the real party in interest. This is so because the one-year statute of limitations has run for any private citizens to pursue relief under the Mortgage Loan Broker's Act. Consequently, the individuals who could have brought suit for the alleged violations of the Act can no longer do so. Thus, they have no legal interest in the outcome of this litigation in that the penalties and forfeitures will go the State, not to the individuals.

        2.     *Whether this case involves a class of at least 100 plaintiffs or class members.*

First, there is only one plaintiff in this matter, the State of South Carolina. Second, even if the Court found it appropriate to determine the number of plaintiffs by looking at the number of users of Defendant's Internet services in this judicial circuit, it could not do so. Simply stated, although more than 667 individuals in South Carolina have used Defendant's Internet services and accepted its terms of use, there is nothing to suggest that at least 100 of those 667 persons reside in the Thirteenth Judicial Circuit. Thus, Defendant has failed to satisfy the numerosity requirement of CAFA.

        3.     *Whether any member of the plaintiff class is a citizen of a state different from any defendant.*

Plaintiff contends that the State of South Carolina cannot be a citizen of the state for purposes of diversity. Defendant, however, argues that, "for purposes of diversity jurisdiction, the real parties in interest are all of the South Carolinians who entered into a Terms of Use Agreement . . . on Defendant's website . . . , not the state as a sovereign entity. Because Defendant is diverse from the member of the plaintiff class, CAFA's minimal diversity requirement is satisfied." (Def.'s Opp'n 11.) Because the Court finds that the State is the real party in interest in this action, however, Defendant's arguments fail as to this factor.

4. *Whether the amount in controversy, in the aggregate, exceeds $5,000,000.*

In examining the documents in this action, the Court is unable to determine that the amount in controversy, in the aggregate, exceeds $5,000,000 because Defendant has failed to establish how many possible violations of the Mortgage Loan Broker's Act occurred in the Thirteenth Judicial Circuit. Thus, because the burden rests with Defendant to demonstrate that removal is proper and Defendant has failed to do so, Defendant's arguments as to this factor fail.

5. *Whether the plaintiffs' claims involve common questions of law or fact sufficient to satisfy the commonality requirement.*

In addition to the factors set forth above, mass actions must also meet the requirement that the plaintiff's claims involve common questions of law or fact. Inasmuch as there is only one plaintiff in this action, this requirement is both inapplicable and unmet.

B. *Whether there is a compelling argument against the right of Plaintiff to enforce its laws in state court.*

As observed by Plaintiff, "[i]f Defendant [is] allowed to keep this action in federal court, the State of South Carolina would be compelled to present itself in federal court to enforce its own laws regulating conduct of business purely within its own borders." (Pl.'s Mot. to Remand 13.) When a sovereign state brings a claim, "considerations of comity make [the Court] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983). Here, no such "clear rule demands" that the Court "snatch" this case from the courts of this State; therefore, remand is appropriate.

C.   *Remaining Arguments*.

The Court has considered the remaining arguments by the parties but, in light of its holding above, need not address each of them individually here.

## VI.   CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court that Plaintiff's motion to remand this action to state court is **GRANTED**.  Because the Court finds that Defendant's removal was made in good faith, however, each party will bear its own costs.  In light of this holding, Defendant's motion to dismiss is hereby rendered **MOOT**.

**IT IS SO ORDERED.**

Signed this 19th day of May, 2009, in Spartanburg, South Carolina.


                                          s/ Henry F. Floyd
                                          HENRY F. FLOYD
                                          UNITED STATES DISTRICT JUDGE